THE UNITED STATES DISTRICT COURT

DISTRICT OF UTAH

| | |
|---|---|
| KRISTOPHER ALLEN ANDERSON,<br><br>Petitioner,<br><br>v.<br><br>STATE OF UTAH,[1]<br><br>Respondent. | **MEMORANDUM DECISION & ORDER DISMISSING HABEAS PETITION**<br><br>Case No. 4:21-CV-112-DN<br><br>District Judge David Nuffer |

Inmate Kristopher Allen Anderson ("Petitioner"), represented by counsel, challenges the execution of his sentence by the state of Utah for being "in violation of the Constitution or laws or treaties of the United States." *See* 28 U.S.C.S. § 2241 (2023). Petitioner argues that his mental disability renders his confinement in state prison contrary to the 8th Amendment's prohibition on cruel and unusual punishment and the 14th Amendment's guarantee of due process. Petitioner asks this court to exercise authority pursuant the Adam Walsh Act of 2006 to convert his twenty-five-years-to-life criminal sentence to a civil commitment in the Utah State Psychiatric Hospital. *See* 18 U.S.C.S. §4248 (2023). Respondent has argued that Petitioner's claims are procedurally defaulted under the Antiterrorism and Effective Death Penalty Act ("AEDPA") and moved to dismiss the complaint with prejudice. *See* 28 U.S.C.S 2244(b)(1)(A). Having carefully considered the Petition and exhibits, (ECF No. 1); Respondent's motion to dismiss and exhibits, (ECF No. 9); and Petitioner's response to Respondent's motion to dismiss (ECF No. 14); the

---

[1] Petitioner must clearly name his custodian (warden or ultimate supervisor of imprisonment facility) as the respondent. R. 2, Rs. Governing § 2254 Cases in the U.S. Dist. Cts. Petitioner is incarcerated at the Davis County Jail. The Court therefore assumes Petitioner means Respondent is Kelly V. Sparks, Davis County Sheriff.

1

Court concludes that relief is unavailable under the AEDPA because Petitioner has procedurally defaulted all issues. Respondent's motion to dismiss with prejudice is therefore granted.

## I. BACKGROUND

Petitioner was convicted of sodomy on a child and sexual abuse of a child and sentenced to twenty-five years to life. The Utah Court of Appeals gave this factual summary:

> [Petitioner], the victim's cousin, travelled from Idaho to visit the victim's family in St. George, Utah, on June 18, 2016. The victim's family did not know in advance that he was coming. When he arrived at their home unexpectedly, [Petitioner] asked whether he could stay the night and whether he could bring beer to drink. The victim's mother and father agreed.
> The victim and his family lived in a three-bedroom apartment. The victim's two older sisters, who were then ages thirteen and eleven, shared a bedroom. The victim, who was six years old at the time, typically slept in the same room as his nineteen-year-old brother. [Petitioner] stayed the night, sleeping in the boys' bedroom. [Petitioner] and the two boys stayed up late playing video games in the boys' room and did not go to sleep until after the victim's parents and two sisters were asleep. [Petitioner] drank beer throughout the night.
> The next morning, [Petitioner] departed before the others awoke. When the mother awoke, she found the victim asleep next to her bed in a pile of laundry. After the mother left for work, the victim confided in one of his sisters that in the night, [Petitioner] had pulled down the victim's pants and underwear and touched his penis and buttocks. The victim then confided in his father, telling him the same story.
> After calling the victim's mother to tell her what had happened, the victim's father called [Petitioner] and asked whether he had done what the victim said he did. [Petitioner] responded that "he wasn't sure" and that "he was drunk and couldn't remember." The father testified that [Petitioner] was "upset," and that he was "choked up, crying a little bit" during the phone call.
> Later, the victim's mother also called [Petitioner]. During the call, she asked if "he tried to put his penis in [the victim's] butt ... and if he was fondling him." [Petitioner] first denied that he had, but after the mother repeated her question, he responded, "[Y]es." She then said, "You know what I have to do, right?" to which he responded, "Yeah, I know." She told him that one of them needed to tell [Petitioner]'s mother, and [Petitioner] stated that he would.

2

> ….
> During trial, the victim testified that on the night of the abuse, he had slept on the floor in the boys' room, while [Petitioner] and his brother slept on the bed. He testified that at some point during the night, while his brother was asleep, [Petitioner] got down on the floor next to him and "pulled down [his] pants and then he pulled down [his] underwear and then [Petitioner] started touching [his] privates." He testified that [Petitioner] had also put "his wiener" on "his butt," was "wiggling" it, and then told him, "[D]on't tell." The victim testified about disclosing the abuse to his family the next day and later during his interview at the Children's Justice Center.
> The State also presented testimony from the victim's parents, both sisters, and the brother. Among other things, each witness detailed changes in the victim's emotional wellbeing since the abuse had occurred. Specifically, they all noted that before the abuse, the victim had been a happy, normal child. However, family members testified that, since the incident, the victim had become depressed, scared, and antisocial. The mother noted that the victim became "angry, very emotional, very untrusting," and "would be very sick to his stomach" and "would wet himself ... if he knew that he was in a position to where he had to talk to someone about [the abuse]." She also testified that the victim had "threatened to kill himself several times." The victim's parents both noted that the victim slept in their room almost every night after the incident; he had done so only rarely before. The victim began counseling to help with these issues. The mother also testified that they had gotten the victim a service dog.
> [Petitioner] testified at trial. He indicated that he drank "five or six beers" throughout the night and stayed up playing video games with the victim's brother until he went to sleep at approximately 4:00 a.m. He testified that he slept between the victim and the brother on the bed, then awoke at 5:00 a.m., and left before the others had gotten up. [Petitioner] also testified that he had been "terrified" by the phone calls from the victim's parents and had responded "no" when the mother asked him whether he had stuck "[his penis] in [the victim's] butt." He testified that when he responded to the mother's accusation by saying, "Yeah, okay," he was agreeing only to call his mother and get some help, such as "sober living." [Petitioner] denied sexually abusing the victim.
> The jury convicted [Petitioner] on one count of child sodomy and on one count of child sexual abuse. He now appeals.

*State v. Anderson.* 2020 UT App 135, ¶¶ 2-12, 475 P.3d 967, (Utah Ct. App 2020), *cert denied*,

3

481 P.3d 1044 (Utah 2021). Petitioner's counsel asserted nine issues on appeal:

> (1) the prosecution engaged in prosecutorial misconduct when it elicited prejudicial and inflammatory testimony about the impacts of the abuse on the victim (ECF No 10-7, at 23-26);
>
> (2) the prosecution engaged in prosecutorial misconduct when it improperly commented on Petitioner's failure to return the investigator's telephone calls (ECF No 10-7, at 26-30);
>
> (3) trial counsel was ineffective for failing to object to prosecutorial misconduct (ECF No 10-7, at 34-35);
>
> (4) trial counsel was ineffective for providing Petitioner's psychosexual evaluation to the prosecution and failing to object to the prosecution's use of the evaluation at trial (ECF No 10-7, at 37-45);
>
> (5) the trial court committed plain error in allowing the state to have the benefit of the evaluation in the examination of witnesses, but denying Petitioner the same opportunity (ECF No 10-7, at 45-46);
>
> (6) trial counsel was ineffective when he mentioned his efforts to settle the case in his opening statement (ECF No 10-7, at 42-45);
>
> (7) the trial court violated Petitioner's due process rights when it denied Petitioner's motion to arrest judgment because Petitioner had not been properly informed of relevant mandatory minimum sentences during the plea negotiations. (ECF No. 9-7, at 46-56);
>
> (8) trial counsel was ineffective for failing to inform Petitioner of mandatory minimum sentences (ECF No 10-7, at 53-56); and
>
> (9) cumulative errors require a new trial (ECF No 10-7, at 56-57.)

The Court of Appeals found that "[m]ost of [Petitioner's challenges on appeal were not raised through a timely objection in the district court." *State v. Anderson*, 474 P.3d at ¶17. The court of appeals further ruled that Petitioner "has not demonstrated that his counsel performed deficiently or that the district court plainly erred or exceeded its discretion. " *Id*. at ¶64. The Utah Supreme Court denied certiorari. *State v. Anderson,* 481 P.3d 1044 (Utah 2021). Petitioner declined to file a petition for certiorari to the United States Supreme Court. Petitioner did not file a petition for habeas corpus in the Utah state courts under the PCRA.

## II. PETITIONER'S ASSERTED GROUNDS FOR FEDERAL-HABEAS RELIEF

Petitioner asserts three grounds for relief in his Petition: (1) Petitioner's trial counsel provided ineffective assistance by failing to offer an insanity plea at trial (ECF No. 1, at 6); (2) Petitioner's appellate counsel was ineffective for failing to argue that trial counsel was ineffective (*id.*); and (3) Petitioner he lacks mental capacity to comprehend that his actions were wrong and therefore his criminal sentence violates the 8th and 14th Amendments and should be converted to an indefinite civil commitment under the supervision of the Utah State Psychiatric Hospital (*id.* at 8).

## III. PROCEDURAL DEFAULT

The United States Supreme Court has declared that when a petitioner has "'failed to exhaust his state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred' the claims are considered exhausted and procedurally defaulted for purposes of federal habeas relief." *Thomas v. Gibson*, 218 F.3d 1213, 1221 (10th Cir. 2000) (quoting *Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991)). "The exhaustion requirement is designed to avoid the 'unseemly' result of a federal court 'upset[ting] a state court conviction without' first according the state courts an 'opportunity to . . . correct a constitutional violation.'" *Davila v. Davis*, 582 U.S. 521, 527 (2017) (quoting *Rose v. Lundy*, 455 U.S. 509, 518 (1982)).

Absent "exceptional circumstances," the Utah Supreme Court will decline to consider an issue which has not been "presented to the district court in such a way that the court has an opportunity to rule on [it]." *Patterson v. Patterson*, 2011 UT 68, ¶ 12. Utah's Post-Conviction Remedies Act states in relevant part:

> A person is not eligible for relief under this chapter upon any
> ground that:

5

> (a) may still be raised on direct appeal or by a post-trial motion;
> (b) was raised or addressed at trial or on appeal;
> (c) could have been but was not raised at trial or on appeal;
> (d) was raised or addressed in any previous request for post-conviction relief or could have been, but was not, raised in a previous request for post-conviction relief; or
> (e) is barred by the limitation period established in Section 78B-9-107.

Utah Code Ann. § 78B-9-106(1) (2023). A PCRA petition must be filed within one year after the date the cause of action has accrued. U.C.A. § 78B-9-107(1) (2023). For the purposes of the claims raised in the Petitioner, Petitioner's cause of action accrued on the last day for filing a petition for certiorari to the United States Supreme Court. U.C.A. §78B-9-106(2)(c).

None of Petitioner's federal claims are exhausted. Petitioner's appellate counsel did not raise any of the issues on appeal that Petitioner now raises in the Petition. Petitioner's claims of ineffective assistance of counsel on appeal were distinct from the claims asserted in the Petition.

Petitioner did not file a state petition for post-conviction relief and would now be time-barred from filing such a claim. The Utah Supreme Court denied certiorari of Petitioner's direct appeal on January 4, 2021. Petitioner had until April 4, 2021 to file a petition for certiorari to the United States Supreme Court. *See* U.S. Sup. Ct. R. 13(1) ("A petition for a writ of certiorari seeking review of a judgment of a lower state court that is subject to discretionary review by the state court of last resort is timely when it is filed with the Clerk within 90 days after entry of the order denying discretionary review. ") Petitioner therefore had until April 4, 2022, to file a state petition for post-conviction relief under the Utah Post Conviction Remedies Act ("PCRA") *See* Utah Code Ann. §78B-9-107(1) (2023). Petitioner did not file a petition for habeas relief under the PCRA in the state courts and the time period has now expired.

Absent "exceptional circumstances," the Utah Supreme Court will decline to consider an issue which has not been "presented to the district court in such a way that the court has an

6

opportunity to rule on [it]." *Patterson v. Patterson*, 2011 UT 68, ¶ 12. Petitioner has not, and likely cannot, establish exceptional circumstances necessary to avoid the procedural bar for a PCRA petition in state courts.

None of Petitioner's claims have been fairly presented to the state's highest court and Petitioner would now be procedurally barred from presenting his claims in Utah courts. Petitioner's claims are therefore procedurally defaulted from federal consideration. *See Thomas v. Gibson*, 218 F.3d 1213, 1221.

### IV. EXCEPTION TO PROCEDURUAL DEFAULT

Procedural default may be avoided if a petitioner can demonstrate either cause and prejudice or a fundamental miscarriage of justice. *Thomas*, 218 F.3d at 1221 ("This court may not consider issues raised in a habeas petition 'that have been defaulted in state court on an independent and adequate procedural ground[] unless the petitioner can demonstrate cause and prejudice or a fundamental miscarriage of justice.'") (quoting *English v. Cody*, 146 F.3d 1257, 1259 (10th Cir. 1998) (alteration in original)).

### A. Cause and Prejudice

A petitioner may be able to overcome procedural default if he can establish "cause" to excuse the procedural default and demonstrate that he suffered "actual prejudice" from the alleged error. *Davila v. Davis*, 582 U.S. 521, 524 (2017). "[T]o satisfy the 'cause' standard, a petitioner must show that 'some objective factor external to the defense' impeded his compliance with Utah's procedural rules." *Dulin v. Cook*, 957 F.2d 758, 760 (10th Cir. 1992) (citations omitted). Where the alleged cause and prejudice is ineffective assistance of counsel, the petitioner must satisfy both prongs of *Strickland*'s familiar two-pronged standard: (1) deficient performance by counsel, measured by a standard of "reasonableness under prevailing

professional norms;" and, (2) prejudice to the defense caused by that deficient performance. *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984). The Supreme Court has made clear that attorney performance is strongly presumed to have been adequate. *Strickland,* 466 U.S. at 690. "Effective appellate counsel should not raise every nonfrivolous argument on appeal, but rather only those arguments most likely to succeed." *Davila v. Davis,* 582 U.S. at 533. A strategic decision to forgo a claim on appeal is only deficient performance if the claim was plainly stronger than those actually presented to the appellate court. *Id*. Meanwhile, to demonstrate prejudice, "[t]he habeas petitioner must show not merely that … errors … created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage." *Murray v. Carrier*, 477 U.S. 478, 494 (1986) (emphasis in original) (alteration in original) (quoting *United States v. Frady*, 456 U.S. 152 (1982)). The petitioner must show that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. *Strickland,* 466 U.S. at 694.

Petitioner does not address the cause and prejudice standards. Instead, Petitioner argues that the Petition should not be dismissed because the Tenth Circuit applies de novo review to habeas claims. (ECF No. 14, at 2 (citing *Bryan v. Mullin*, 335 F.3d 1207 (10th Cir. 2003).) However, *Bryan* is inapposite to Petitioner's procedural default. *Bryan* addresses ineffective assistance of counsel and the federal standards for reviewing a decision to deny an evidentiary hearing, but not the exhaustion requirement and procedural default. Petitioner's claims are procedurally defaulted because they were never presented to the state courts and no procedural mechanism remains by which Petitioner could exhaust them. In contrast, the habeas claims at issue in *Bryan* had already been presented to the state courts. *Bryan*, 335 F.3d at 1214 ("In the instant § 2254 habeas corpus petition, [the petitioner] asserted the same claims of ineffective

assistance he asserted in state court. ") Therefore, Petitioner's reliance on *Bryan* to support his argument that the Petition should not be dismissed is misplaced. Petitioner fails to establish cause and prejudice to excuse his procedural default.

### B. Miscarriage of Justice

A petitioner may also overcome the procedural bar if he can show that his conviction resulted in a "fundamental miscarriage of justice." *See Thomas*, 218 F.3d at 1221 (alteration omitted) (citation omitted). A fundamental miscarriage of justice may be proven by actual innocence where a petitioner can show that "in light of new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." *McQuiggin v. Perkins*, 569 U.S. 383, 386-87 (2013) (quoting *Schlup v. Delo*, 513 U.S. 298, 329 (1995)). To be plausible, an actual-innocence claim must be grounded on solid evidence not adduced at trial. *Calderon v. Thompson*, 523 U.S. 538, 559 (1998) (citing *Schlup,* at 324). The petitioner must show that "it is more likely than not that no reasonable juror would have convicted him in light of the new evidence" presented in his habeas petition. *Id*. Because such evidence is so rare, "in virtually every case, the allegation of actual innocence has been summarily rejected." *Id.* (citation omitted).

Petitioner does not argue that he has actually innocent of the crimes for which he was convicted. Rather, Petitioner offers the conclusory argument that it a miscarriage of justice would result if Petitioner's mental capacity to stand trial remains unreviewed by the federal courts. (ECF No. 14, at 4-6.) Petitioner argues that he could not have raised the issue of his mental capacity on direct appeal because "the state appellate process is limited to reviewing the existing record." *Id*. at 4. However, Petitioner neglects to address the question of whether the issues could have been presented in a state habeas petition under the PCRA. Petitioner fails to

offer adequate support for the contention that a miscarriage of justice would result unless his procedural default is excused.

## V. CONCLUSION

All of Petitioner's claims are procedurally defaulted. Petitioner has failed to establish that the procedural default should be excused.

**IT IS THEREFORE ORDERED** that the motion to dismiss is **GRANTED.** The Petition for habeas corpus is **DENIED** and the action is **DISMISSED WITH PREJUDICE**.

**IT IS ALSO ORDERED** that a certificate of appealability is **DENIED**.

This action is **CLOSED**.

DATED this 21st of September, 2023.

BY THE COURT

_____
JUDGE DAVID NUFFER
United States District Court

10